```
             IN THE UNITED STATES DISTRICT COURT

         FOR THE EASTERN DISTRICT OF CALIFORNIA

LAZARUS ORTEGA,                )   2: 08-CV-00588 SOM
                               )
          Plaintiff,           )
                               )   SCREENING ORDER; ATTACHMENT
     vs.                       )   (NOTICE OF SUBMISSION OF
                               )   DOCUMENTS)
CALIFORNIA DEPARTMENT OF       )
CORRECTIONS AND                )
REHABILITATION CORRECTIONAL    )
OFFICER DEASON; CALIFORNIA     )
DEPARTMENT OF CORRECTIONS      )
AND REHABILITATION             )
CORRECTIONAL OFFICER           )
HUTCHINGS; CALIFORNIA          )
DEPARTMENT OF CORRECTIONS      )
AND REHABILITATION STAFF       )
PSYCHOLOGIST COSTA;            )
CALIFORNIA DEPARTMENT OF       )
CORRECTIONS AND                )
REHABILITATION LIEUTENANT      )
WILLIAMS; CALIFORNIA           )
DEPARTMENT OF CORRECTIONS      )
AND REHABILITATION ASSOCIATE   )
WARDEN REYES; and CALIFORNIA   )
DEPARTMENT OF CORRECTIONS      )
AND REHABILITATION WARDEN      )
WALKER,                        )
                               )
          Defendants.          )
_____)
```

SCREENING ORDER

I.    INTRODUCTION.

Plaintiff Lazarus Ortega is a prisoner proceeding pro se. On June 6, 2008, Ortega filed the First Amended Complaint in this matter. Ortega asserts that Defendants failed to respond to his multiple requests to change cells because Ortega thought his cellmate was dangerous. Ortega alleges that Defendants did not move Ortega into a new cell. Ortega seeks to hold Defendants

liable under 42 U.S.C. § 1983 for the assault that he subsequently suffered at the hands of his cellmate.

On January 5, 2009, this case was reassigned to this judge. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this court has "screened" Ortega's First Amended Complaint and determined that, to the extent it asserts claims against Defendants in their individual capacities, the First Amended Complaint states potentially viable claims. Accordingly, the court directs service of the First Amended Complaint on Defendants in their individual capacities. However, to the extent the Complaint asserts money damage claims against Defendants in their official capacities, the court dismisses those claims, as Defendants in their official capacities have immunity from such claims.

II.     BACKGROUND FACTS.

The First Amended Complaint alleges that California Department of Corrections and Rehabilitation ("CDCR") officials were deliberately indifferent to Ortega's safety when they failed to respond to Ortega's multiple requests to change cells because his cellmate had threatened to harm and/or kill Ortega.

Ortega says that, on or about November 8, 2006, he asked CDCR correctional officer Deason to arrange for Ortega to be transferred to a new cell because Ortega's cellmate, inmate Williams, had made threats to harm and/or kill Ortega. First

Amended Complaint (June 6, 2008) ¶ 12.  Ortega alleges that Deason responded to his request by saying, "I don't do cell moves on my [F]ridays, go ask HUTCHINGS."  Id. ¶ 13.  Deason is named as a Defendant in his individual capacity.  Id. ¶ 3.

Ortega alleges that, soon after talking with Deason, he asked CDCR correctional officer Hutchings to move Ortega to a new cell because his cellmate had threatened him.  Ortega says that Hutchings responded by telling Ortega that there were no vacant housing cells that Ortega could be moved to.  Ortega alleges that he informed Hutchings that cell #232 was vacant, but that Hutchings responded that cell #232 was out of order because of a plumbing problem.  Hutchings allegedly then told Ortega that a cell change was not going to happen and that Ortega would just have to wait for a cell to open up.  See First Amended Complaint ¶¶ 14-16.  Hutchings is named as a Defendant in his individual capacity.  Id. ¶ 4.

Ortega alleges that he then met with his mental health expert, CDCR psychologist Costa, and told Costa what had happened with Deason and Hutchings.  Ortega then allegedly asked Costa for help.  Costa allegedly told Ortega that Ortega was exaggerating and that Costa, as the staff psychologist, could not help Ortega change his cell because that was an issue of custody.  See First Amended Complaint ¶ 17.  Costa is named as a Defendant in his individual capacity.  Id. ¶ 5.

Ortega alleges that the following day, November 9, 2006, he once again asked Hutchings for a cell change out of concern for his safety. Ortega alleges that Hutchings refused to act. <u>See</u> First Amended Complaint ¶ 18.

Ortega alleges that, a little later that day, he orally complained to Deason and Hutchings's supervisor, CDCR Lieutenant Williamson, that safety concerns made a cell change imperative. Ortega says that he told Williamson that he had tried to get Deason, Hutchings, and Costa to move his cell, but that none of them had acted. Ortega alleges that Williams also did nothing. <u>See</u> First Amended Complaint ¶¶ 19-21. Williamson is named as a Defendant in his individual capacity. <u>Id.</u> ¶ 6.

Ortega says that, when he then returned to his cell, his cellmate "slammed" a 13-inch television set into his head, knocking him unconscious. <u>See</u> First Amended Complaint ¶ 23. Ortega says that he was taken to the emergency room at the University of California Davis Hospital and was treated for severe head, neck, spine, and nerve damage, as well as breathing problems. <u>Id.</u> ¶ 24.

Ortega alleges that CDCR associate warden Reyes and CDCR warden Walker failed to properly train and supervise Deason, Hutchings, Costa, and Williamson regarding what to do when an inmate asks to be assigned to a new cell based on safety

concerns. Reyes and Walker are named in their individual and official capacities. Id. ¶ 32.

III.     ANALYSIS.

Because Ortega filed the present § 1983 action as a pro se prisoner, this court must screen his Complaint to determine whether it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

>   A.    To the Extent the Complaint Seeks Money Damages Under 42 U.S.C. § 1983 From Defendants Reyes and Walker in Their Official Capacities, Those Claims are Dismissed.

Ortega seeks money damages under 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

However, Reyes and Walker are immune with respect to § 1983 money damage claims against them in their official capacities. Under the Eleventh Amendment, a state is immune from certain actions brought in federal court by her own citizens or citizens of other states. Papasan v. Allain, 478 U.S. 265, 276 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 106 (1984); Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1989). A suit against state officials in their official capacities is a suit against the state itself and therefore is also subject to the Eleventh Amendment bar. Will, 491 U.S. at 71 ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); Pennhurst, 465 U.S. at 101 ("The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest'") (citing Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945)).

Ortega is seeking money damages under § 1983 against Reyes and Walker in their official capacities. Reyes and Walker are the associate warden and warden of a CDCR prison, respectively. CDCR is a state agency that has Eleventh Amendment immunity from claims for money damages pursuant to § 1983. See Goodman v. Cal. Dept. of Corr. & Rehab., 2008 WL 4610268, 6 (C.D. Cal. October 14, 2008) ("Thus, Defendant California Department of

Corrections and Rehabilitation, a state agency, sued for monetary damages and injunctive relief is entitled to Eleventh Amendment immunity."); Alcorn v. Sierra Conservation Ctr., 2008 WL 4470511, 2 (E.D. Cal. Oct. 2, 2008) ("Because SCC is a part of the California Department of Corrections and Rehabilitation, which is a state agency, it is entitled to Eleventh Amendment immunity from suit, and cannot be named as a defendant in this action."); Solvey v. Tilton, 2008 WL 1734189, 1 (E.D. Cal. Apr. 11, 2008) ("Because the California Department of Corrections and Rehabilitation is a state agency, it is entitled to Eleventh Amendment immunity and is an improper Defendant in this suit."). Moreover, as a state agency, CDCR is not a "person" for purposes of § 1983.  See Will, 491 U.S. at 71; Christman v. Micheletti, 2008 WL 5157493, 1 (9th Cir. Dec. 9, 2008) ("The district court properly dismissed Christman's claims against the California Department of Corrections and Rehabilitation because the state agency is not a 'person' under section 1983.").  Because the official capacity § 1983 claims against Reyes and Walker are claims against a state, those claims are barred by the Eleventh Amendment.  Will, 491 U.S. at 71; Pennhurst, 465 U.S. at 101. Accordingly, those official capacity claims are dismissed.

B.  Ortega's Individual Capacity Claims May Proceed.

1.  Ortega Sufficiently Alleges Individual Capacity § 1983 Claims against Defendants Deason, Hutchings, Costa, and Richardson.

Ortega alleges that Defendants Deason, Hutchings, Costa, and Richardson ignored his pleas for help in preventing an assault. Ortega's § 1983 claims against Deason, Hutchings, Costa, and Richardson therefore arise under the Eighth Amendment, which requires that prison officials take reasonable steps to ensure the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). Specifically, prison officials have a duty to protect inmates from violence at the hands of other inmates. Id. However, not every injury suffered by one prisoner at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

A prison official violates the Eighth Amendment only when two requirements are met:

> First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities . . . ." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is

>one of "deliberate indifference" to inmate health or safety.

Id. (citations and footnote omitted).

>[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.  This standard does not require the official to "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.  But, on the other hand, he must have more than a mere suspicion that an attack will occur."  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

>When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined.  We must focus on whether the individual defendant was in a position to take steps to avert the stabbing incident, but failed to do so intentionally or with deliberate indifference.  In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant.  Especially when, as in this case, a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault.

9

Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) (citations omitted).

Ortega's allegations that Defendants Deason, Hutchings, Costa, and Richardson were deliberately indifferent to his well-being sufficiently state a claim under § 1983.

>    2.   Ortega Sufficiently Alleges Individual Capacity § 1983 Claims against Defendants Reyes and Walker.

Under § 1983, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 648 (9th Cir. 1989) (citing Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987)). Supervisory officials are not vicariously liable for the actions of their subordinates. Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)).  A supervisor may therefore be liable under § 1983 when the supervisor's failure to train or to supervise personnel led to the deprivation of constitutional rights. See Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984).

Ortega alleges that associate warden Reyes and warden Walker failed to train and or properly supervise Defendants Deason, Hutchings, Costa, and Richardson and that, as a result, those Defendants did not act on Ortega's pleas to transfer him to

10

a different cell, which would have prevented the assault he suffered. In other words, Ortega asserts that, as supervisors, Reyes and Walker are individually liable under § 1983 for their own inaction, which allegedly caused Ortega to be assaulted. Ortega therefore sufficiently alleges a viable § 1983 violation by Reyes and Walker.

IV.     CONCLUSION.

For the foregoing reasons, the court dismisses Ortega's First Amended Complaint to the extent it asserts official capacity § 1983 money damage claims against Reyes and Walker. To the extent however, that the First Amended Complaint asserts individual capacity § 1983 claims, it sufficiently alleges viable claims to go forward. This, of course, does not mean the court is ruling that Ortega's claims are actually viable. Instead, this court is only ruling that the allegations contained in the First Amended Complaint are sufficient to warrant service of it on Defendants.

Having now screened the First Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and determined that it sufficiently states claims to proceed against all Defendants in their individual capacities, and having previously determined that Ortega is entitled to proceed in forma pauperis, the court orders:

1. Service shall be made on Deason, Hutchings, Costa, Williamson, Reyes, and Walker for claims asserted against them in their individual capacities only.

2. The Clerk of the Court shall send Ortega six (6) USM-285 forms, one summons, an instruction sheet, and an endorsed copy of the First Amended Complaint filed June 6, 2008.

3. Within thirty days from the date of this order, Ortega shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

    a. The completed Notice of Submission of Documents;

    b. One completed summons;

    c. One completed USM-285 form for each Defendant listed in number 1 above (Deason, Hutchings, Costa, Williamson, Reyes, and Walker); and

    d. Seven (7) copies of the endorsed First Amended Complaint filed June 6, 2008.

4. Ortega need not attempt service on Defendants and need not request waiver of service.  Upon receipt of the

above-described documents, the court will direct the United States Marshal to serve the above-named Defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, February 13, 2009.



    /s/ Susan Oki Mollway
    Susan Oki Mollway
    United States District Judge

Ortega v. Deason, et al., 2: 08-CV-00588 SOM; SCREENING ORDER

```
              IN THE UNITED STATES DISTRICT COURT

           FOR THE EASTERN DISTRICT OF CALIFORNIA

LAZARUS ORTEGA,                 )    2: 08-CV-00588 SOM
                                )
              Plaintiff,        )
                                )    NOTICE OF SUBMISSION OF
         vs.                    )    DOCUMENTS
                                )
CALIFORNIA DEPARTMENT OF        )
CORRECTIONS AND                 )
REHABILITATION CORRECTIONAL     )
OFFICER DEASON; CALIFORNIA      )
DEPARTMENT OF CORRECTIONS       )
AND REHABILITATION              )
CORRECTIONAL OFFICER            )
HUTCHINGS; CALIFORNIA           )
DEPARTMENT OF CORRECTIONS       )
AND REHABILITATION STAFF        )
PSYCHOLOGIST COSTA;             )
CALIFORNIA DEPARTMENT OF        )
CORRECTIONS AND                 )
REHABILITATION LIEUTENANT       )
WILLIAMS; CALIFORNIA            )
DEPARTMENT OF CORRECTIONS       )
AND REHABILITATION ASSOCIATE    )
WARDEN REYES; and CALIFORNIA    )
DEPARTMENT OF CORRECTIONS       )
AND REHABILITATION WARDEN       )
WALKER,                         )
                                )
              Defendants.       )
_____  )
```

<u>NOTICE OF SUBMISSION OF DOCUMENTS</u>

Plaintiff Lazarus Ortega hereby submits the following documents in compliance with the court's Screening Order filed February ___, 2009:

    One completed summons form;

    Six completed USM-285 forms; and

    Seven endorsed copies of the First Amended Complaint

Dated: _____       _____
                                Lazarus Ortega